# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**ANER RUTH ROBERTS**                                                   **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO. 3:12CV397 HTW-LRA**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**           **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Aner Roberts appeals the final decision denying her application for Supplemental Security Income ("SSI") benefits. The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed for the reasons that follow.

## Factual and Procedural Background

On May 7, 2009, Roberts filed an application for SSI, alleging she became disabled on August 29, 2008. The application was denied initially and on reconsideration. She appealed the denial and on January 19, 2011, Administrative Law Judge Philip P. McLeod ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review on April 13, 2012. She now appeals that decision.

Plaintiff has not worked since she was diagnosed with Lupus in 1995, over 15 years ago. She was approximately 49 years old at her administrative hearing and alleges disability due primarily to Lupus. In the first administrative hearing on October 6, 2010, the ALJ noted that there was *no* medical evidence of record and granted counsel a continuance to obtain records from Plaintiff's medical providers. The hearing was rescheduled to December 10, 2010, and the ALJ again noted a lack of medical evidence from Plaintiff's treating physician, Dr. Daniel Gambrell. He directed counsel to supplement the record with additional evidence within two weeks.[1]

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[2] the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of her application, May 7, 2009. At steps two and three, the ALJ found that although her Lupus and hypertension were severe, none of her impairments met or medically equaled any listing. At step four, the ALJ found that Plaintiff could not return to her past relevant work as a poultry arranger, but has the residual functional capacity to:

---

[1]ECF No. 6-2, pp. 24-56.

[2]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

> . . . perform a limited range of light work activity, as defined in 20 C.F.R. § 416.967(b). The claimant can stand and/or walk for four hours in an eight-hour workday in increments of thirty to forty-five minutes at a time. She can only occasionally stoop; and is able to use her fingers for precise work up to only half of the workday but not continuously. Further, the claimant is limited to jobs where she would receive primarily verbal, as opposed to written, instruction. Finally, the claimant has a slightly to moderately limited ability to complete work tasks in a normal workday at a consistent pace and to maintain attention and concentration for extended periods.[3]

Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could work as a product assembler, folder, and ticket taker.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

---

[3]ECF No. 6-2, p. 14.

**Discussion**

Plaintiff alleges that the Commissioner's decision should be reversed or alternatively remanded because (1) the ALJ erred in failing to find that her headaches were a severe impairment at step two; (2) the ALJ erred in failing to assign controlling weight to her treating physician's opinions; and (3) the ALJ erred in finding that she had the residual functional capacity assessment to perform a limited range of light work. The Court rejects these arguments for the reasons that follow.

### 1. Whether the ALJ erred in failing to find Plaintiff's headaches were a severe impairment at step two.

Plaintiff's first point of error is that the ALJ erred in failing to find that her headaches were a severe impairment at step two. In support, she cites her visits to Dr. Gambrell in July 2008 and September 2010, documenting her complaints of headaches and dizziness. The Commissioner counters that the ALJ properly considered Plaintiff's headaches as a symptom of her Lupus, and in support, cites the U.S. National Library of Medicine, National Institute of Health, Systemic Lupus Erythematosus-PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001471/ (last reviewed February 14, 2011)(indicating that symptoms of Lupus include, inter alia, headaches).

In evaluating the severity of Plaintiff's impairments, the ALJ expressly relied on *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985)*,* in compliance with controlling Fifth Circuit law. *Stone* holds that an impairment is not severe "'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected

to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id*. at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)) *See also Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (citing *Stone*, 752 F.2d at 1101) (unpublished ).  Based on the examination of the record as a whole, the ALJ concluded that Plaintiff's Lupus and hypertension were severe impairments, but that neither her depression nor her diabetes was severe.  Roberts does not challenge either of these findings on appeal.

With regard to her chronic headaches, a neutral reading of the ALJ's opinion supports the Commissioner's contention that the ALJ found that they were a symptom of her Lupus, and not the separate and distinct medically determinable impairment she alleges on appeal.  Given the deficiency and ambiguous nature of the evidence, this was not an unreasonable conclusion.  When asked to identify the illnesses, injuries, or conditions that limit her ability to work in her initial disability report, Plaintiff listed the following: "Lupus, insomnia, problems getting up, joint pain, weakness, dizzy spells, headaches, [and] problems using [her] right arm."  But in response to a headaches questionnaire in September 2010, she notes that her headaches were caused by her Lupus. There are no laboratory findings or objective medical tests of record to the contrary. Although she notes elsewhere that she suffers from migraines, there is no evidence in the

5

record that she was ever diagnosed with migraines.[4]

Even if the Court were to determine that the ALJ erred in failing to find Plaintiff's headaches were a separate and distinct medically severe impairment at step two, the error was harmless. *Carey v. Apfel*, 230 F.3d. 131, 142 (5th Cir. 2000). The failure to make a severity finding at step two alone is not grounds for automatic reversal or remand. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis). After finding that Plaintiff's Lupus and hypertension were severe at step two, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work. In making this finding, the ALJ considered all of Plaintiff's medically determinable impairments and their limiting effects, including her headaches. *Graves v. Astrue*, 2:07 CV306 KS-MTP, 2008 WL 4093726 (S.D. Miss. Aug. 27, 2008) (citing 20 C.F.R. §§ 404.1523 & 416.923)). As set forth below, substantial evidence supports the ALJ's step-five finding that Plaintiff's impairments do not significantly compromise her ability to perform a restricted range of light work.

### 2. Whether the ALJ erred in failing to assign controlling weight to the form opinions of Plaintiff's treating physician.

Plaintiff argues that the ALJ erred in failing to assign controlling weight to the questionnaire forms submitted by her treating physician, Dr. Gambrell. She claims the

---

[4]ECF Nos. 6-6, p. 8, 15; 6-7, p. 56.

ALJ erroneously rejected Dr. Gambrell's more recent opinions, in favor of a consultative examination performed the prior year; and, that the ALJ's failure to order a second consultative examination or recontact Dr. Gambrell was reversible error. These arguments are not well-taken.

In the weeks preceding the first administrative hearing, Dr. Gambrell completed two questionnaire forms entitled "Clinician Assessment of Pain" and a "Physical Capacities Evaluation." On the Clinical Assessment of Pain form, he circled responses indicating that: (1) the claimant's pain is "present to such an extent as to be distracting to adequate performance of daily activities or work;" (2) that physical activity would cause an "[i]ncrease of pain to such an extent that bed rest and/or medication is necessary; and, (3) that drug side effects "can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc."[5]

On the Physical Capacities Evaluation form, he checked responses indicating that Plaintiff could not frequently lift or carry more than one pound, and only five pounds occasionally. He also opined that she could sit for five hours and stand and/or walk for one hour in an eight-hour workday; could never climb stairs or ladders; bend; stoop; reach overhead; operate motor vehicles or dangerous machinery, and could only rarely perform pushing, pulling, and gross and fine manipulation. He also indicated that she does not require the use of an assistive device "to ambulate even minimally," which is in direct

---

[5]ECF No. 6-7, p. 41.

contradiction to her claim on her disability report that she had to use a walker, cane, or brace everyday. Ultimately, Dr. Gambrell concluded that Plaintiff's impairments would cause her to miss more than four days or more of work per month, and that she was totally and permanently disabled.[6]

As an initial matter, the ALJ properly assigned no weight to Dr. Gambrell's conclusion that the Plaintiff was totally and permanently disabled, as this issue is reserved solely for the Commissioner. *Luckey v. Astrue,* 458 F. App'x 322, 326 (5th Cir. 2011) ("It is the Commissioner who must ultimately determine whether a claimant is disabled, and not the claimant's physician.").

Moreover, the record fails to establish that Dr. Gambrell was her treating physician as contemplated by the regulations. *Hernandez v. Astrue*, 278 F. App'x. 333, 338 n.4 (5th Cir. 2008) (treating physician is a physician who has provided medical treatment or an evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant); 20 C.F.R. § 404.1502. A treating source's opinion is entitled to great weight "[when the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." *Giles v. Astrue,* 433 F. App'x 241, 256 (5th Cir. 2011) (unpublished) (quotations omitted). Although Plaintiff testified that Dr. Gambrell has been treating her for approximately one year, the medical records reflects that he treated her twice in 2008, and then four times in the weeks

---

[6]ECF No. 6-7, p. 42.

8

preceding her administrative hearings two years later. There is no record of treatment from Dr. Gambrell or any other medical provider in 2009.[7]

Dr. Gambrell's treatment records do not support the extreme functional limitations indicated in the questionnaires. His clinic records from July 2008 indicate that Plaintiff complained of headaches and dizziness, but she was in no acute distress. His records from September 2008 note that she complained of soreness in her feet and right leg, but they are otherwise illegible as noted by the ALJ. Plaintiff returned to Dr. Gambrell two years later on September 8, 2010, and completed an "Initial Pain Assessment." She had a rash on her arm, head, and back, which reportedly began two weeks prior to the appointment. On examination, Dr. Gambrell observed that she was bald and had patches of light and dark skin, but she was in no acute distress. Two weeks later, he performed a physical examination and noted her hair loss and skin lesions, and that she had tenderness and a decreased range of motion in her shoulders, elbows, and wrists. No other functional limitations were reported or assessed at the time. She also complained of headaches and dizziness, and Dr. Gambrell adjusted her medication.[8]

The ALJ is free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott*

---

[7]ECF No. 6-7, pp. 40-64.

[8]*Id.*

9

*v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [but when] these so-called reports 'are unaccompanied by thorough written reports, their reliability is suspect.'" *Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) (quoting *Brewster v. Heckler*, 786 F.2d 581 (3rd Cir. 1986)). In compliance with social security regulations, the ALJ in this case considered the length of Dr. Gambrell's treatment; the frequency of examination; the nature and extent of the treatment relationship; the extent to which his opinions were supported by the medical record; and the consistency of his opinion with the record as a whole. 20 C.F.R. § 404.1527(d). In doing so, he provided the following good cause for assigning minimal weight to Dr. Gambrell's form opinions:

> The undersigned gave only minimal weight to the opinion of Dr. Gambrell in the form of questionnaires . . . . The claimant had been seen by Dr. Gambrell only a few times earlier that month (aside from two occasions in July 2008). Therefore, it does not appear that a substantial treating relationship existed between the claimant and Dr. Gambrell at the time the questionnaires were completed. In any case, the opinion set forth in the questionnaires is not based on a longitudinal treating history of any kind. The opinion set forth in the questionnaires is also wholly unsupported by Dr. Gambrell's own few scant treatment notes. Nor does the opinion find any support elsewhere in the record. The opinion is even inconsistent with the claimant's own statement regarding the use of an assistive device. For all these reasons, the undersigned gave only minimal weight to the opinion set forth in the questionnaires.[9]

---

[9]ECF No. 6-2, p. 17.

Plaintiff does not dispute the ALJ's sound reasoning, nor does she direct this Court to any objective medical evidence supporting the extreme limitations that Dr. Gambrell assessed.

Plaintiff argues that the ALJ should have re-contacted Dr. Gambrell or ordered a "consultative neurological evaluation to clarify conflicting measurements of [her] range of motion that can affect the degree of pain."[10] However, it is unclear what "conflicting measurements" warranted additional clarification. The Court also notes that the ALJ continued the first administrative hearing for the express purposes of obtaining additional medical records from Plaintiff's medical providers, including Dr. Gambrell. When the hearing resumed in December 2010, the ALJ again expressed his concern that Dr. Gambrell's records were still inadequate and directed counsel to supplement the record. The only new evidence submitted were lab results of an unspecified nature; the treatment records from Plaintiff's two visits in 2008; and pain-assessment questionnaires that she completed in 2010.[11]

An ALJ's duty to recontact is triggered only when other medical opinion evidence based on personal examination or treatment of the claimant is absent from the record. 20 C.F.R. § § 404.1512(e), 416.927(d); *Jones v. Astrue,* 691 F.3d 730 (5th Cir. 2012). *Cornett v. Astrue*, 261 F. App'x 644, 649 ("[T]he ALJ's need to recontact a medical source arises only when the available evidence is inadequate to determine if there is

---

[10]ECF No. 7, p. 7.

[11]ECF Nos. 6-2, pp. 24-56; 6-7, pp. 35-64.

11

disability."). That was not the case here.

Plaintiff underwent a consultative examination in August 2009, and in a detailed report, the examiner notes that she was reportedly diagnosed with systemic Lupus erythematous in 1995. Roberts told the examiner that she was given Ibuprofen at the time, and another medication that she never got because it was very expensive. She also claimed that she was not aware of any other treatment she received for Lupus, but later testified that she had taken Lupus medication since her diagnosis in 1995. The examiner also noted that she had a bottle of Plaquenil which is used to treat Lupus, and that she was on this medication on four of the previous disability exams that he had performed. His objective findings indicated that she ambulated without difficulty and was able to get on and off the examination table without assistance. She was unable to squat because of right knee pain, but was able to stand on her heels and toes. She also had negative straight leg raises; good manual dexterity; excellent dorsalis pedis and posterior tibial pulses bilaterally; and no clubbing, cyanosis, or edema in her extremities. She had a relatively large lipoma over her right shoulder and what appeared to be a Lupus rash over the right side of her jaw, neck, and deltoid area, but otherwise "no peripheral joint that was red, hot, tender, swollen, or that showed bone deformity, instability, or effusion."[12]

The only other medical records are from Scott Regional Hospital in January 2010, which show that Plaintiff presented to the emergency room with complaints of back pain

---

[12] ECF No. 6-2, p. 46; 6-7, pp. 17-19.

and an accelerated heart rate. The examiner notes that her chief complaint was numbness in the left arm, which was better by the time she arrived. She was told to take her blood pressure medication.[13]

Contrary to what Plaintiff argues, the ALJ expressly indicated in his residual functional capacity assessment that he assigned "equally significant weight" to the emergency room records, Dr. Gambrell's "*treatment notes and clinical findings,*" and the consultative examiner's report. (Emphasis in original). While Plaintiff asserts this was error because her condition allegedly worsened after the consultative examination, nothing in the examination findings of either physician or the objective medical evidence as a whole, supports the degree of limitations assessed by Dr. Gambrell in the weeks preceding the administrative hearing. Her failure to seek treatment for a year also undercuts the functional limitations he assigned. *Doss v. Barnhart*, 137 F. App'x 689 (5th Cir. 2005). Although she testified that it was due to her lack of insurance and that she sought free treatment at the Sebastopol Clinic, counsel advised that the clinic had no record of treatment at the second administrative hearing. At any rate, benefits were denied not because of Plaintiff's inability to afford the treatment, but rather because she failed to prove that her untreated impairments were so severe that they prevented her from performing a limited range of light work. *Peebles v. Chater*, 77 F.3d 477 (5th Cir.

---

[13]ECF No. 6-7, pp. 21-28.

1995).[14]

In sum, the ALJ applied the proper legal standards in evaluating Dr. Gambrell's form opinions, and his decision to assign them minimal weight is supported by substantial evidence.

3. **Whether the ALJ's residual functional capacity assessment is supported by substantial evidence.**

In her final point of error, Plaintiff alleges the ALJ's residual functional capacity assessment that she can perform a limited range of light work is not supported by substantial evidence because it is internally inconsistent and fails to include any functional limitations resulting from her headaches. In support, she alleges that the ALJ's findings that she had no episodes of decompensation and only mild restrictions in daily acitivities; maintaining social functioning; and in maintaining concentration, persistence, and pace, are not reconciled with his residual functional capacity finding that she is "slightly to moderately limited" in her ability to complete work tasks and maintain attention and concentration for extended periods of time.[15]

As a threshold matter, Plaintiff does not dispute the underlying evidence that shows she had only these mild limitations in mental functioning. Nor does she explain how a residual functional capacity finding that she was *more* limited than the evidence

---

[14]ECF No. 6-2, pp. 17, 40-42. Social security regulations provide that a claimant may have justifiable cause for not following prescribed treatment if he is unable to afford it, and free community resources are unavailable. SSR 82-59, 1982 WL 31384 at * 4.

[15]ECF No. 6-2, p. 13.

14

indicated would prejudice her or affect her substantial rights. *Audler v. Astrue*, 501 F.3d 446, 448) (5th Cir. 2007).

Nor is her contention that the ALJ failed to consider her headaches in his residual functional capacity assessment well taken. The ALJ found in relevant part that Plaintiff's subjective complaints indicated that she had the residual functional capacity to perform a limited range of light work that allowed for "a slightly to moderately limited ability to complete work tasks in a normal workday at a consistent pace and to maintain attention and concentration for extended periods." Based on her "*subjective complaints of pain*," he also found that she should be "limited to jobs where she would receive primarily verbal, as opposed to written, instruction." (Emphasis in original). Plaintiff does not cite, nor does the Court find, any objective medical evidence showing her headaches produced limitations exceeding these.[16]

In assessing her credibility, the ALJ considered her hearing testimony that she suffers from headaches nearly everyday that last the entire day, and her allegations that her prescription medication does not provide any relief. He also noted her testimony that she could not stand for long periods or walk very far because her legs get weak, and that she cannot sit for very long before her bones begin to ache. She also testified that she has difficulty rising from a seated position; is most comfortable lying down; cannot lift or carry more than five pounds; is unable to cook or clean for herself; and is confined to her

---

[16]ECF No. 6-2, p. 17.

15

house because of her symptoms. She also testified that she spends most of her day sleeping because of the side effects of her medication, and rated her pain as eight on a scale from one to ten. But as the ALJ noted, contrary to her testimony, Plaintiff indicated in her disability reports that her medications have no affect on her ability to care for her personal needs. She also acknowledged that she can prepare simple meals that do not require lifting heavy pots and pans. And while she asserted that she uses a walker or cane everyday, Dr. Gambrell opined that "she does not require the use of an assistive device to ambulate even minimally."[17]

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c) (2009). When a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ's determination is entitled to considerable deference and is supported by substantial evidence here. No medically acceptable clinical or laboratory diagnostic techniques established the existence of impairments which could be reasonably expected to produce the severity of pain that Plaintiff alleges. No examining or consulting physician, including Dr. Gambrell, ever expressly opined that her headaches would impact her ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity

---

[17]ECF Nos. 6-2, pp. 24-56; 6-7, p. 42.

16

assessment. *See Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). Despite her subjective complaints of constant and unremitting pain, the ALJ's residual functional capacity finding is substantially supported by the treatment records from Dr. Gambrell, Scott Regional Hospital, the consultative examiner's report, and claimant's testimony.

For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. The objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 9th day of July 2013.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE